FILED IN OPEN COURT
DATE 4/11/17
BY K Dotson
DEPUTY CLERK
HARRISONBURG DIVISION, W.D. of VA

IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

UNITED STATES OF AMERICA

v.

MARIA ROSALBA ALVARADO MCTAGUE, and
FELIX ADRIANO CHUJOY,
also known as Felix Chujoy Alvarado.

Criminal No. 5:14-cr-00055

In violation of:

8 U.S.C.§ 1324(a)(l)(A)(iii)-(v), (B)
8 U.S.C.§ 1324a(a)(l)(A), (B), (f)(l), (h)(3)
18 U.S.C. § 2
18 U.S.C. § 1503
18 U.S.C. § 1512 (b)(1), (k)
18 U.S.C. § 1546(a)
18 U.S.C. § 1589(a)(3)-(4), (b),(c)
18 U.S.C. § 1592(a)(2)
18 U.S.C. § 1594

# SECOND SUPERSEDING INDICTMENT

The Grand Jury charges that at all times relevant to this Second Superseding Indictment:

## INTRODUCTION

### The Defendants

1. The defendants, MARIA ROSALBA ALVARADO MCTAGUE ("ALVARADO") and FELIX ADRIANO CHUJOY ("CHUJOY") (collectively, "Defendants"), were born in Peru and have since become naturalized United States citizens. ALVARADO is the mother of CHUJOY. Although the Defendants reside in Harrisonburg, Virginia, ALVARADO regularly travels to Peru, where the Defendants still have family.

2. From a date not known to the grand jury, but beginning in or around 2007 and

continuing until December 2014, ALVARADO was the owner of Inca's Secret restaurant, which was located in Harrisonburg, Virginia.

3. At all relevant times, CHUJOY assisted ALVARADO at Inca's Secret by running errands, transporting workers, closing out the cash register, and making deposits of restaurant proceeds, among other tasks. When ALVARADO was unavailable or traveling, CHUJOY served as an informal manager or supervisor of Inca's Secret restaurant. At all relevant times, ALVARADO oversaw the restaurant and served as the individual responsible for the day-to-day operations of the restaurant.

**The Plan**

4. On her visits to Peru, ALVARADO encouraged and attempted to encourage various victims to work illegally at Inca's Secret. To encourage these victims, ALVARADO would propose illegally smuggling the victims into the United States illegally across the border with Mexico or with the use of a fraudulently obtained visa; paying the victims substandard wages; arranging for the victims to reside with her and CHUJOY; and promising to later obtain legal status for the victims or pay the victims "American" wages if the victims would work at Inca's Secret for six months. ALVARADO explained that the six-month period was necessary so that the victims could work off the "debt" owed to ALVARADO for her expenses associated with the victims.

**Human Trafficking**

5. ALVARADO arranged for at least one victim, Maribel Ramos Livon, to immigrate illegally across the Mexico border. ALVARADO paid for Ramos's flight to Mexico City and provided Ramos with cash and instructions on how to travel to Matamoros, Mexico, to meet a pre-arranged "coyote" to lead Ramos across the river into Texas.

6. When victims balked at immigrating illegally across the Mexico-United States

border, ALVARADO assisted victims in submitting visa applications to the U.S. Embassy in Lima, which contained false statements, so that the victims could obtain tourist visas to the United States. The purpose of the visa applications were always fraudulent, as ALVARADO's intent was to have the victims work for her restaurant in the United States, not travel there as visitors, relatives, or claimed medical assistants to her mother. In all instances known to the grand jury, ALVARADO paid the expenses related to the submission of the visa application and the travel expenses for the victims to come to America.

7. For example, ALVARADO provided fake certificates and a fake employment contract to Arturo Pareahauche Pena to give to the U.S. Embassy as part of Pareahauche's visa application, which Pareahauche knew were fake. One document stated that Pareahauche had nursing or medical training, although this was false. A fake employment contract, provided and signed by ALVARADO, stated that Pareahauche would work for ALVARADO as a medical assistant to her mother when she visited the United States. Although the visa was approved, Pareahauche did not serve as a medical assistant in the United States.

8. On another occasion, ALVARADO assisted Niceforo Carbajal Rivera in obtaining a visa to visit the United States from Peru and instructed him to tell embassy officials that he was her cousin and that he was only coming to the United States to visit her. This was not true, as ALVARADO had already persuaded Carbajal to come to the United States and work as a cook Inca's Secret. When Carbajal followed ALVARADO's directions, Carbajal knew those statements were false.

9. The day after each victim arrived at her home in Harrisonburg, ALVARADO ordered the victims to work at Inca's Secret.

**Working Conditions**

10. Once arriving in the United States, the victims worked long hours for low wages at Inca's Secret. Victims often worked approximately ten to twelve-hour shifts, six or seven days per week. For this work, these victims were paid approximately $450-500 per month, total. ALVARADO and CHUJOY would not allow the victims, or any employees, to keep the tips provided to them by customers, or speak to customers or each other. ALVARADO had security cameras installed in the restaurant and told employees that she was monitoring them when she was not there. ALVARADO and CHUJOY often transported the workers to and from the restaurant or directed others to do so. ALVARADO also ordered the victims to perform other services outside of Inca's Secret, such as house cleaning and yard work. For this work, the victims were often not paid any wages.

11. In addition to the victims from Peru, ALVARADO and CHUJOY employed other individuals at Inca's Secret. These individuals were undocumented immigrants without legal authority to work in the United States. ALVARADO and CHUJOY paid these workers in cash and did not report this illegal labor -- or the work of any restaurant employees -- to the appropriate authorities and agencies, as required by law. The defendants paid the workers' wages that were significantly below the federal minimum wage, and thus the defendants benefited by the low wages and by not complying with various laws.

**Coercion and Threats**

12. ALVARADO and CHUJOY forced the victims from Peru to continue working at Inca's Secret through fear and various threats, such as threatening to contact the police and have the victims arrested, jailed, and deported. For example, CHUJOY stated to at least one victim that ALVARADO possessed weapons and warned the victim not to make her angry and that he was

a military soldier. As another example, ALVARADO told a victim that ALVARADO would call the police and have the victim's child taken and the victim imprisoned.

13. ALVARADO also regularly reminded the victims that they owed her a debt that needed to be repaid, but refused to tell the victims the amount of the debt, which only increased over time. When the victims offered to pay the debt, ALVARADO refused. ALVARADO and CHUJOY never intended for the victims to repay the "debt." The victims feared that not working to pay off the debt would result in harm to them.

14. To help control the victims and to help conceal them from authorities, ALVARADO and CHUJOY housed the victims in their home in Harrisonburg. ALVARADO and CHUJOY monitored the victims' whereabouts, including retaining the passport of at least one victim, and transported the victims to and from the restaurant. Isolated from others, unable to speak English, fearful of authorities or outside help, and without money or documents, these victims were unable to escape the involuntary servitude imposed by ALVARADO and CHUJOY.

**Obstruction and Witness Tampering**

15. On December 4, 2014, a grand jury indicted ALVARADO and CHUJOY on various charges. A few days later, the court arraigned ALVARADO and CHUJOY on the indictment and released CHUJOY on bond. As a condition of his release, the court ordered CHUJOY not to contact any current or potential witnesses, including any employees of Inca's Secret or residents of his home. The court placed CHUJOY into the third-party custody of his sister, Gladys Chujoy.

16. On December 17, 2014, the court released ALVARADO on bond, placed her into the third-party custody of others, and ordered her not to contact any employees of Inca's Secret or residents of her home with CHUJOY.

17. After their release on bond, ALVARADO and CHUJOY repeatedly contacted employees of Inca's Secret in contravention of the court's order and with the purpose of hindering, influencing, obstructing, or preventing their own prosecution. To conceal their behavior, ALVARADO and CHUJOY often used the phones of their friends and associates to contact the witnesses. In many of these calls, ALVARADO and CHUJOY instructed individuals on what to say or not say to others, including having the witnesses lie.

18. For example, ALVARADO's daughter contacted Reyna Fuentes Penate and asked her to come over to her apartment, where she resided with CHUJOY. Once there, Gladys Chujoy paid Fuentes money and handed Fuentes her cellphone on which ALVARADO was on the line. On this and other occasions, ALVARADO instructed Fuentes, a witness and employee of Inca's Secret, to say she did not know anything. ALVARADO's cellphone records show her communicating with CHUJOY almost immediately before and after this contact with Fuentes.

19. As another example, after learning that Jose Diaz, a witness and former worker at Inca's Secret, had been served with subpoena to testify in the grand jury, ALVARADO telephoned Diaz and told him what to say in the grand jury. During the same conversation, ALVARADO handed the phone to CHUJOY, who then also instructed Diaz on what to say or not say in the grand jury. On other occasions, ALVARADO and CHUJOY made comments to Gerardo Mejia Callejas, a witness and former worker at Inca's Secret, that caused him to avoid service of a grand jury subpoena. In order to have Mejia testify in the grand jury, law enforcement had to obtain a material witness warrant from the court and have Mejia arrested and detained.

**<u>COUNT ONE</u>**
**(Labor Trafficking Conspiracy)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment

are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2007 and continuing until December 2014, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, conspired with each other and with others known and unknown to the grand jury to knowingly provide and obtain the labor and services of individuals known to the grand jury by means of a scheme, plan, or pattern intended to cause the persons to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm, and by means of the abuse and threatened abuse of law and legal process, in violation of Title 18, United States Code, Sections 1589(a)(3) and (a)(4).

3. All in violation of Title 18, United States Code, Section 1594.

**COUNT TWO**
**(Forced Labor – Maribel Ramos Livon)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2007 and continuing until December 2014, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, did knowingly provide and obtain the labor and services of Maribel Ramos Livon by means of a scheme, plan, or pattern intended to cause Ramos to believe that, if Ramos did not perform such labor or services, Ramos or another person would suffer serious harm and by means of the abuse and threatened abuse of law and legal process.

3. All in violation of Title 18, United States Code, Sections 1589(a)(3)-(4),

1589(c); Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability)..

**<u>COUNT THREE</u>**
**(Forced Labor – Arturo Pareahauche Pena)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2007 and continuing until December 2014, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, did knowingly provide and obtain the labor and services of Arturo Pareahauche Pena, also known as Arturo Pariahauche Pena, by means of a scheme, plan, or pattern intended to cause Pareahauche to believe, that if Pareahauche did not perform such labor or services, Pareahauche or another person would suffer serious harm and by means of the abuse and threatened abuse of law and legal process.

3. All in violation of Title 18, United States Code, Sections 1589(a)(3)-(4), 1589(c); Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability).

**<u>COUNT FOUR</u>**
**(Forced Labor for Financial Gain)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2007 and continuing until December 2014, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO

CHUJOY, did knowingly benefit, financially and by receiving anything of value, from participation in a venture which has engaged in the providing and obtaining of labor and services by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm and by means of the abuse or threatened abuse of law and legal process, in violation of Title 18, United States Code, Sections 1589(a)(3) and (a)(4), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means.

3. All in violation of Title 18, United States Code, Sections 1589(b)-(c); Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability).

**COUNT FIVE**
**(Illegal Use of Documents to Further Trafficking – Arturo Pareahauche Pena)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2007 and continuing until December 2014, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, did knowingly conceal, remove, confiscate, and possess the passport and immigration documents of Arturo Pareahauche Pena, also known as Arturo Pariahauche Pena, with the intent to violate Title 18, United States Code, Sections 1589(a)(3) and (a)(4), that is, to knowingly provide and obtain the labor and services of Pareahauche by means of a scheme,

plan, or pattern intended to cause Pareahauche to believe, that if Pareahauche did not perform such labor or services, Pareahauche or another person would suffer serious harm and by means of the abuse and threatened abuse of law and legal process.

3. All in violation of Title 18, United States Code, Sections 1592(a)(2); Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability).

**COUNT SIX**
**(Conspiracy to Violate Immigration Statutes)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2007 and continuing until December 2014, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, knowingly conspired with each other and with other persons known and unknown to the grand jury, to knowingly or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal harbor, or shield from detection, such alien in any place, including any building, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iii); and to encourage and induce an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv).

3. All in violation of Title 8, United States Code, Section 1324(a)(l)(A)(v)(I).

**COUNT SEVEN**
**(Harboring an Alien – Maribel Ramos Livon)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2007 and continuing until December 2014, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, knowing and in reckless disregard of the fact that an alien, namely, Maribel Ramos Livon, had come to, entered and remained in the United States in violation of law, did and attempted to conceal, harbor, and shield from detection such alien in buildings and other places for the purpose of commercial advantage and private financial gain.

3. All in violation of Title 8, United States Code, Sections 1324(a)(l)(A)(iii) and (B)(i); Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability).

**<u>COUNT EIGHT</u>**
**(Harboring an Alien – Arturo Pareahauche Pena)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2007 and continuing until December 2014, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, knowing and in reckless disregard of the fact that an alien, namely, Arturo Pareahauche Pena, also known as Arturo Pariahauche Pena, had come to, entered and remained in the United States in violation of law, did and attempted to conceal, harbor, and shield from detection such alien in buildings and other places for the purpose of commercial

advantage and private financial gain.

3. All in violation of Title 8, United States Code, Sections 1324(a)(l)(A)(iii) and (B)(i); Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability)

**COUNT NINE**
**(Harboring an Alien – Niceforo Carbajal Rivera)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2007 and continuing until December 2014, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, knowing and in reckless disregard of the fact that an alien, namely, Niceforo Carbajal Rivera, had come to, entered, and remained in the United States in violation of law, did and attempted to conceal, harbor, and shield from detection such alien in buildings and other places for the purpose of commercial advantage and private financial gain.

3. All in violation of Title 8, United States Code, Sections 1324(a)(l)(A)(iii) and (B)(i); Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability).

**COUNT TEN**
**(Harboring an Alien – Gerardo Mejia Callejas)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2007 and continuing until December 2014, in the Western District of Virginia and elsewhere, the defendants,

MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, knowing and in reckless disregard of the fact that an alien, namely, Gerardo Mejia Callejas, also known as Jose Mejia, had come to, entered, and remained in the United States in violation of law, did and attempted to conceal, harbor, and shield from detection such alien in buildings and other places for the purpose of commercial advantage and private financial gain.

3. All in violation of Title 8, United States Code, Sections 1324(a)(l)(A)(iii) and (B)(i); Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability).

**COUNT ELEVEN**
**(Inducing an Alien – Maribel Ramos Livon)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2007 and continuing until December 2014, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, did encourage and induce an alien, namely, Maribel Ramos Livon, to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence in the United States was and would have been in violation of law, for the purpose of commercial advantage and private financial gain.

3. All in violation of Title 8, United States Code, Section 1324(a)(l)(A)(iv) and (B)(i); Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability).

**COUNT TWELVE**
**(Inducing an Alien – Arturo Pareahauche Pena)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2007 and continuing until December 2014, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, did encourage and induce an alien, namely, Arturo Pareahauche Pena, also known as Arturo Pariahauche Pena, to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence in the United States was and would have been in violation of law, for the purpose of commercial advantage and private financial gain.

3. All in violation of Title 8, United States Code, Section 1324(a)(l)(A)(iv) and (B); Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability).

**<u>COUNT THIRTEEN</u>**
**(Inducing an Alien – Niceforo Carbajal Rivera)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2007 and continuing until the fall of 2014, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, did encourage and induce an alien, namely, Niceforo Carbajal Rivera, to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence in the United States was and would have been in violation of

law, for the purpose of commercial advantage and private financial gain.

3. All in violation of Title 8, United States Code, Section 1324(a)(l)(A)(iv) and (B); Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability).

**COUNTS FOURTEEN TO EIGHTEEN**
**(Employing an Alien)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2011 and continuing until December 2014, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, engaged in a practice and pattern of hiring for employment at Inca's Secret in the United States certain aliens, as specified in the table below, knowing that said aliens were unauthorized aliens (as defined in Title 8 United States Code, Section 1324a(h)(3)), with respect to such employment.

| COUNT | ALIEN | DATES |
|---|---|---|
| Fourteen | Maribel Ramos Livon | May 2013 to June 2014 |
| Fifteen | Arturo Pareahauche Pena, also known as Arturo Pariahauche Pena | June 2012 to July 2014 |
| Sixteen | Niceforo Carbajal Rivera | September 2014 to December 2014 |
| Seventeen | Reyna Fuentes Penate | May 2014 to December 2014 |
| Eighteen | Gerardo Mejia Callejas, also known as Jose Mejia | 2011 to December 2014 |

3. All in violation of Title 8, United States Code, Sections 2, 1324a(a)(l)(A),

1324a(f)(1), and 1324a(h)(3).

**COUNT NINETEEN**
**(Visa Fraud – Arturo Pareahauche Pena)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around 2011 and continuing until the June 2012, in the Western District of Virginia and elsewhere, the defendant, MARIA ROSALBA ALVARADO MCTAGUE, aided and abetted others to knowingly possess, obtain, accept, receive, and use a nonimmigrant visa prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, that is a B-1 visa, in the name ofArturo Pareahauche Pena, also known as Arturo Pariahauche Pena, which Pareahauche and the defendant knew was procured by means of a false claim and statement and otherwise procured by fraud.

3. All in violation of Title 18, United States Code, Sections 2, 1546(a).

**COUNT TWENTY**
**(Visa Fraud – Niceforo Carbajal Rivera)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around summer 2014 and continuing until the September 2014, in the Western District of Virginia and elsewhere, the defendant, MARIA ROSALBA ALVARADO MCTAGUE, aided and abetted others to knowingly possess, obtain, accept, receive, and use a nonimmigrant visa prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, that is a B-1 visa, in the name of Niceforo Carbajal Rivera, which Carbajal and the defendant knew was

procured by means of a false claim and statement and otherwise procured by fraud.

3. All in violation of Title 18, United States Code, Sections 2, 1546(a).

**COUNT TWENTY-ONE**
**(Obstruction)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around December 12, 2014 until February 2015, in the Western District of Virginia and elsewhere, the defendant, MARIA ROSALBA ALVARADO MCTAGUE, did corruptly influence, obstruct, and impede and endeavor to influence, obstruct, and impede, the due administration of justice in *United States v. Maria Rosalba Alvarado McTague et al.,* No. 5:14-cr-00055, in the U.S. District Court for the Western District of Virginia, by attempting to influence, delay, and prevent the testimony of witnesses.

3. All in violation of Title 18, United States Code, Section 1503.

**COUNT TWENTY-TWO**
**(Obstruction)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around December 12, 2014 until February 2015, in the Western District of Virginia and elsewhere, the defendant, FELIX ADRIANO CHUJOY, did corruptly influence, obstruct, and impede and endeavor to influence, obstruct, and impede, the due administration of justice in *United States v. Maria Rosalba Alvarado McTague et al.,* No. 5:14-cr-00055, in the U.S. District Court for the Western District of Virginia, by attempting to influence, delay, and prevent the testimony of witnesses.

3. All in violation of Title 18, United States Code, Section 1503.

**COUNT TWENTY-THREE**
**(Conspiracy to Witness Tamper)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around December 12, 2014 until February 2015, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, conspired with each other and with others known and unknown to the grand jury, to knowingly intimidate, threaten, and corruptly persuade another person, or attempt to do so, and engage in misleading conduct toward another person, with intent to influence, delay, and prevent the testimony of any person in an official proceeding, *United States v. Maria Rosalba Alvarado McTague et al.,* No. 5:14-cr-00055, in the U.S. District Court for the Western District of Virginia, in violation of Title 18, United States Code, Section 1512(b)(1).

3. All in violation of Title 18, United States Code, Section 1512(k).

**COUNT TWENTY-FOUR**
**(Witness Tampering – Reyna Fuentes Penate)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around December 12, 2014 until February 2015, in the Western District of Virginia and elsewhere, the defendant, MARIA ROSALBA ALVARADO MCTAGUE, did knowingly intimidate, threaten, and corruptly persuade, or attempt to do so, and engage in misleading conduct toward Reyna Fuentes Penate through various means, such asking and directing Fuentes to lie, with the intent

to influence, delay, and prevent the testimony of Fuentes in an official proceeding, *United States v. Maria Rosalba Alvarado McTague et al.*, No. 5:14-cr-00055, in the U.S. District Court for the Western District of Virginia.

3. All in violation of Title 18, United States Code, Sections 1512(b)(l) Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability).

**COUNT TWENTY-FIVE**
**(Witness Tampering)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around December 12, 2014 until February 2015, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE and FELIX ADRIANO CHUJOY, did knowingly intimidate, threaten, and corruptly persuade, or attempt to do so, and engage in misleading conduct toward Jose Diaz, through various means, including but not limited to asking or directing Diaz to lie to others or shade his testimony, with the intent to influence, delay, and prevent the testimony of Diaz in an official proceeding, *United States v. Maria Rosalba Alvarado McTague et al.*, No. 5:14-cr-00055, in the U.S. District Court for the Western District of Virginia.

3. All in violation of Title 18, United States Code, Sections 1512(b)(l) Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability).

**COUNT TWENTY-SIX**

**(Witness Tampering)**

1. The allegations set forth in the Introduction to this Second Superseding Indictment are incorporated herein by reference.

2. From a date not known to the grand jury, but beginning in or around December 12, 2014 until February 2015, in the Western District of Virginia and elsewhere, the defendants, MARIA ROSALBA ALVARADO MCTAGUE, FELIX ADRIANO CHUJOY, and GLADYS GEORGETTE CHUJOY, did knowingly intimidate, threaten, and corruptly persuade, or attempt to do so, and engage in misleading conduct toward Gerardo Mejia Callejas, also known as Jose Mejia, through various means, such as encouraging Mejia to leave the area so that he would not speak with law enforcement, with the intent to influence, delay, and prevent the testimony of Mejia in an official proceeding, *United States v. Maria Rosalba Alvarado McTague et al.,* No. 5:14-cr-00055, in the U.S. District Court for the Western District of Virginia.

3. All in violation of Title 18, United States Code, Sections 1512(b)(l); Title 18, United States Code, Section 2 (aiding and abetting); and *Pinkerton v. United States*, 328 U.S. 640 (1946) (Pinkerton liability).

**NOTICE OF FORFEITURE**

1. Upon conviction of one or more of the felony offenses alleged in this Indictment, the defendant(s) shall forfeit to the United States:

a. Violation(s) of 18 U.S.C. §§ 1594, 1589(a) or (b).

Forfeiture is pursuant to 18 U.S.C. §§ 1594(d) and (e)(1):

> (d) The court, in imposing sentence on any person convicted of a violation of this chapter, shall order, in addition to any other sentence imposed and irrespective of any provision of State law, that such person shall forfeit to the United States - (1) such

person's interest in any property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such violation; and (2) any property, real or personal, constituting or derived from, any proceeds that such person obtained, directly or indirectly, as a result of such violation.

(e)(1) The following shall be subject to forfeiture to the United States and no property right shall exist in them: (A) Any property, real or personal, used or intended to be used to commit or to facilitate the commission of any violation of this chapter. (B) Any property, real or personal, which constitutes or is derived from proceeds traceable to any violation of this chapter.

b. Violation(s) of 18 U.S.C. § 1546(a); 8 U.S.C. §§ 1324(a)(l)(A), (iii), (iv), (v)(l) and 8 U.S.C. § 1324a(a)(l)(A).

Forfeiture is pursuant to 18 U.S.C. § 982(a)(6):

(A)The court, in imposing sentence on a person convicted of a violation of, or conspiracy to violate, section 274(a), 274A(a)(l), or 274A(a)(2) of the Immigration and Nationality Act or section 555, 1425, 1426, 1427, 1541, 1542, 1543, 1544, or 1546 of this title, or a violation of, or conspiracy to violate, section 1028 of this title if committed in connection with passport or visa issuance or use, shall order that the person forfeit to the United States, regardless of any provision of State law-

(i) any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense of which the person is convicted; and

(ii) any property real or personal

(I) that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the person is convicted; or

(II) that is used to facilitate, or is intended to be used to facilitate, the commission of the offense of which the person is convicted.

(B)The court, in imposing sentence on a person described in

subparagraph (A), shall order that the person forfeit to the United States all property described in that subparagraph.

And/or 8 U.S.C. § 1324(b) and 28 U.S.C. § 2461(c):

(b)(1) Any conveyance, including any vessel, vehicle, or aircraft, that has been or is being used in the commission of a violation of subsection (a) of this section, the gross proceeds of such violation, and any property traceable to such conveyance or proceeds, shall be seized and subject to forfeiture.

c. <u>Violations of 18 U.S.C. §§ 1956, 1956(a)(1)(B)(i) and (ii).</u>

Forfeiture is pursuant to 18 U.S.C. § 982(a)(l) Any property, real or personal, involved in such offense, or any property traceable to such property.

d. <u>Violations of 18 U.S.C. §§ 1503 and 1512(b)(1).</u>

Forfeiture is pursuant to 18 U.S.C. § 981(a)(l)(C) and 28 U.S.C. § 2461(c):

Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

2. The property to be forfeited to the United States includes but is not limited to the following property:

**a. <u>Money Judgment</u>**

An unknown sum of United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate was obtained directly or indirectly as a result of said offenses or is traceable to such property.

**b. <u>Real Property</u>**

(1) All real property and appurtenances known as:

**452 Cardinal Drive, Harrisonburg, Virginia 22801**
**<u>Tax Map Number 015 D 9</u>**

BEING the same property conveyed to Maria R. Alvarado-McTague by Deed dated February 15, 2008, from Andrew R.

Schoof and Marlene A. Schoof, husband and wife. Said Deed is recorded in the Circuit Court of Rockingham County, Virginia, as Instrument Number 2008-00005555, Vol-3271, Page 56.

(2) All real property and appurtenances known as:

**469 Eastover Drive Harrisonburg, Virginia 22801**
**Tax Map Number 015 F 7**

BEING the same property conveyed to Maria R. Alvarado-McTague by Deed from James M. Triplett, Jr., and Donna Sedwick Triplett, husband and wife, by Deed dated July 16, 2007. Said Deed is recorded in the Rockingham County Circuit Court, Virginia, as Document 2007-00025714, Vol 3153, Page 494.

**c. Financial Account(s)**

(1) Bank of America Account No. 435001751143, all funds held in the name of Maria R. Alvarado-McTague

(2) Bank of America Account No. 435004811475, all funds held in the name of Felix A. Chujoy

(3) Bank of America Account No. 435004806969, all funds held in the name of Felix A. Chujoy

(4) Bank of America Account No. 237014582727, all funds held in the name of Francynelle Garcia

(5) Bank of America Account No. 237005495111, all funds held in the name of Francynelle Garcia

(6) Bank of America Account No. 237005497834, all funds held in the name of Francynelle Garcia

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with a third person;
c. has been placed beyond the jurisdiction of the Court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be subdivided

Without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

A TRUE BILL, this 11 day of April 2017.

s/Foreperson
FOREPERSON

[signature] for
RICK MOUNTCASTLE
Acting U.S. Attorney